### HENRY B. WHEELWRIGHT *vs.* JOHN GREER.
### SAME *vs.* SAME.
### SAME *vs.* SAME.

No statute of limitations in this commonwealth applies to complaints for the maintenance of bastard children.

The Gen. Sts. *c.* 72, § 2, and *St.* 1859, *c.* 239, § 3, authorizing certain officers to make a complaint for the maintenance of bastard children, if the woman entitled to make such complaint refuses or neglects to do so, do not apply to cases where bastard children were born before those statutes went into effect.

If a woman has made a complaint for the maintenance of her bastard child, and afterwards refuses or neglects to prosecute it, those statutes do not authorize the officers therein named to make a new complaint, but to prosecute the existing one.

METCALF, J. Each of these three cases is a complaint against the defendant under *c.* 72 of the Gen. Sts. which prescribes proceedings for "the maintenance of bastard children." The first two cases are complaints, dated October 2d 1863, and present one and the same question only, namely, whether § 2 of that chapter authorizes this complainant to make and prosecute these complaints. That section is a reënactment (in substance) of § 3 of *St.* 1859, *c.* 239, in which its provisions were first enacted. Previously, none but the mother of a bastard child could institute and prosecute a complaint against the alleged father; and he, if found guilty, was to be charged with the maintenance of the child, with the assistance of the mother, in such manner as the court should order, and to give bond to perform such order, and also to indemnify and save harmless, against all charges of maintenance, *any town* which might be chargeable with the maintenance of such child. Rev. Sts. *c.* 49, § 4. The new provisions, now contained in the Gen. Sts. *c.* 72, are these:

By § 2, " If a woman entitled to make a complaint refuses or neglects so to do, when requested by an overseer of the poor of the place where she resides or has her settlement, or one of the alien commissioners, the superintendent of a state almshouse, or of the hospital at Rainsford Island, or a person authorized by either of them to make the request, or ·either of her parents, or her guardian, the persons so requesting may make the complaint ; and when already made, if she refuses or neglects to prosecute the same, either of said persons may prosecute the case to final judgment, for the benefit of the parent, guardian, city, town or state." By § 7, if the defendant is found guilty, he is to be charged, as by Rev. Sts. *c.* 49, above cited, and be required to give bond " to indemnify and save harmless, against all charges of maintenance, *her parents* and any city or town *or the state* chargeable with the maintenance of such child." By *St.* 1863, *c.* 240, a board of state charities was established, and the board of commissioners in relation to alien passengers was abolished, and the duties of those commissioners in the prosecution of cases of settlement and bastardy were devolved upon the general agent of the board of state charities. And it is in the capacity of such general agent that this complainant has instituted these three prosecutions in behalf of the Commonwealth. In the first and second of them, each complaint alleges the birth of the child to have been before the act of 1859, *c.* 239, was passed — the first in 1854, and the second in 1858 — that the mother never made a complaint against the defendant, but neglected and refused so to do, although requested by the complainant. Upon trials in the superior court, it was ruled by *Lord,* J. that the Gen. Sts. *c.* 72, § 2, did not authorize this complainant to institute a complaint in a case in which the child was born before *St.* 1859, *c.* 239, was in force. And the cases are before us on exceptions taken to that ruling.

Another and distinct question, not passed upon at the trials is now raised by the counsel for the defendant, which we will first consider. He contends that these are not cases in which the mother was " entitled to make a complaint" against the defendant, in 1863, when these complaints were made by the

complainant; the children having been born in 1854 and 1858, the one nine years and the other five years previously; that in 1863, the mother's right to institute a complaint was barred by the statute of limitations; and that it is only when she is "entitled to make a complaint," and refuses or neglects to do so, that any third person is authorized to interpose. As this objection was taken by the defendant in his pleadings in the superior court, he may now rightfully present it. But it cannot prevail. No statute of limitations bars a mother's right to complain against the father of her bastard child. She was therefore entitled to complain against him at the time when these complaints were made. *The King* v. *Miles*, 1 Sessions Cases, (2d ed.) 83. *Keniston* v. *Rowe*, 16 Maine, 38. *Murphy's case*, 3 Zabr. (N. J.) 180.

The other and main question for our decision is, whether the above cited provisions of the Gen. Sts. *c.* 72, are to have a retroactive operation; that is, whether they are to operate on cases existing at the time when they were enacted, and thus extend the liability of the defendant beyond that to which only he was by law subject before they were enacted. And we are of opinion that they are not to have such operation, and that the ruling at the trials was correct. When these children were born, and for years afterwards, the defendant was not liable to be prosecuted on a complaint made by any one besides the mother, nor to be required, on being found guilty, to give bond to indemnify the state against charges for the support of the children. That chapter, therefore, if applied to these cases, creates a new obligation and imposes a new duty on the defendant, in respect to matters already past, and would have a retroactive operation, contrary to the principle that law is a rule of conduct prescribed for, and attaching itself to, the future actions of men. 1 Bl. Com. 46. Broom's Max. (3d ed.) 33, *et seq.*

In an early case before the supreme court of the United States, (3 Dallas, 397,) Mr. Justice Paterson said that, in general, retrospective laws of every description accord neither with sound legislation nor with the fundamental principles of the social compact and in 7 Johns. 500, Mr. Justice Thompson

said that it would be an unjust " imputation against the legisla-
ture, that they intend a law to be of that description, unless the
most clear and unequivocal expressions are adopted." To the
like effect, see 10 Mass. 439; 2 Gray, 333; 1 Allen, 323; 15
Maine, 134; 2 Exch. 33, 43; 9 C. B. 567; 1 Best & Smith, 758;
8 Irish Law Rep. 80. But the words of the Gen. Sts. *c.* 72, § 2,
are not clearly and unequivocally applicable to preëxisting cases.
We therefore need not inquire how far, or in what cases, a stat-
ute made retrospective in express terms, or by necessary implica-
tion, would be held to be operative. On this subject there are
conflicting decisions. See Sedgw. on Stat. and Const. L. 686-
695. We discuss none of those cases, either in our own or other
reports; because we decide the present cases on the ground
that if these complaints can be sustained, they will oblige the
defendant, if found guilty, to give bond, which the law did not
before require of him, to indemnify the state against charges for
the maintenance of the children. See *Wheelwright* v. *Sylves-
ter*, 4 Allen, 59.

The following cases seem to the court to be decisive of the
first two now before us: By *St.* 1817, *c.* 186, § 5, it was enacted
that " the inhabitants of any town or district within this com-
monwealth, who have incurred expense for the support of any
pauper, whether he was legally chargeable to them by means of
his settlement or not, may recover the same against such person,
his executors or administrators, in an action of assumpsit for
money paid." But in the case of *Medford* v. *Learned*, 16 Mass.
215, in which the plaintiffs had expended money for the support
of the defendant, his wife and child, as paupers, before and after
said statute was passed, and sued him for reimbursement, it was
decided that they could recover only so much as they had thus
expended after the statute went into operation; that though the
words of the statute, " who have incurred expense," if grammat-
ically used, imported a past consideration, yet that the legislature
could not have intended that the statute should have a retroac-
tive effect, by creating a debt or obligation on a consideration that
was past, and was not of itself a legal foundation for a prom
ise; and that, moreover, it was not within the constitutional

power of the legislature to create such new obligation. In *Brunswick* v. *Litchfield*, 2 Greenl. 28, where the settlement of a person was transferred, by the operation of a legislative resolve, from one town to another, it was decided that the town to which the settlement was transferred was not liable for the support of that person as a pauper before the statute was passed. So a statute making stockholders in corporations personally liable for corporate debts cannot be applied to such debts contracted before the passing of the statute. *Coffin* v. *Rich*, 45 Maine, 507. It was provided by a statute of New York, that " it shall be lawful for any party to a suit, who shall have obtained a verdict in his favor, to tax interest upon the amount of such verdict, as costs, from the time of the obtaining of the same to the time of the perfecting judgment thereon." It was decided that the charge of interest could not be made on a verdict returned before the statute was passed. *Bailey* v. *Mayor, &c. of New York*, 7 Hill, 146. See also 2 Shaw's Digest, 1328, *pl.* 10.

We see no difference in principle between a statute that requires a person to pay money, and a statute that requires him to give a bond which may oblige him to pay money, which he was not before liable to pay.

In these two cases the exceptions are overruled.

In the third of these cases, Margaret Raymond made and swore to a complaint in the police court of Boston, charging the defendant, in due form, as the father of her bastard child, born since the General Statutes took effect, to wit, on the 19th day of July 1861. A warrant was issued on that complaint, and the defendant was apprehended thereon and carried before the said court, and there gave bond to appear at the superior court to answer to said complaint and abide the order of that court. The said Margaret never entered her complaint in that court, and this complainant preferred to said police court the complaint on which the question in this case is raised. The matter and form of that complaint are thus : The complainant alleges the facts above stated, (setting forth a copy of the complaint made by the said Margaret,) and concludes with this prayer : " Therefore the said

Wheelwright, having reason to believe and believing that said John Greer is the father of the said bastard child of said Margaret Raymond, and accuses him of being the father of said child, and that said child was begotten by said Greer, and born of said Margaret, at the places and times set forth in the complaint of said Margaret, which is made a part of this complaint; the said Margaret having been constant in her accusation, the said Wheelwright, in behalf of, and for the benefit of, the Commonwealth, prays that the said Greer may be apprehended and held to answer to this accusation, and further dealt with according to law." A warrant was issued on which the defendant was apprehended, and the same proceedings were thereupon had, which had before been had on the complaint of the said Margaret. A supplementary complaint was made and entered in the superior court, on which the case was heard, and said court ruled " that the right of the Commonwealth to institute original proceedings was a statute right, and that a condition precedent to such a right was the failure of the mother to prosecute ; that as the mother had not neglected or refused to institute proceedings, the right of the present complainant had not accrued; that the statute had made provision for cases like the case at bar, by authorizing the present complainant to prosecute the complaint originally instituted by the mother, so that there is no cause for extending, by construction, the right of the party beyond the strict language of the law ; and that this complaint could not be maintained." To this ruling the complainant alleged exceptions.

By the Gen. Sts. *c.* 72, § 2, when a woman refuses to make a complaint, others may make it ; and when she refuses or neglects to prosecute a complaint which she has made, others " may prosecute the case to final judgment." The corresponding provision in *St.* 1859, *c.* 239, § 3, was, that when she had made a complaint, and neglected or refused to prosecute it, others might " prosecute to final judgment such complaint already made." We have no doubt that the meaning of both provisions is the same ; and that by prosecuting the case, when a complaint has been made by the mother, which she neglects or refuses to

prosecute, is meant the prosecution of " such complaint," and not the making and prosecuting of a new one.

In this case, the accusation against the defendant was made by the complainant, and the defendant was arrested on a warrant issued on, and was held to answer to, " this accusation."

It was stated by the complainant's counsel that the original complaint, to which a warrant is annexed, is sometimes lost, or destroyed, and cannot be prosecuted. How, if at all, a third party can proceed in such case, is a question the considerati n of which must be deferred till it is regularly before the court for decision.

In this third case the exceptions are overruled.

*G. W. Searle,* for the defendant.

*J. G. Locke,* for the complainant.

MEMORANDUM : On the thirty-first day of August 1865, the Hon. Theron Metcalf resigned the office of Justice of this Court, which he had held since the twenty-fifth day of February **1848.**